IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTL INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| ALLERGAN PLC, ALLERGAN USA, | ) | **JURY TRIAL DEMANDED** |
| INC., ZELTIQ AESTHETICS, INC., | ) | |
| ZELTIQ IRELAND UNLIMITED | ) | |
| COMPANY, ZIMMER | ) | |
| MEDIZINSYSTEMS CORPORATION, and | ) | |
| ZIMMER MEDIZINSYSTEME GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff BTL Industries, Inc. (BTL), by its attorneys, for its complaint against Allergan

plc, Allergan USA, Inc. (Allergan USA) (collectively "Allergan"), Zeltiq Aesthetics, Inc. (Zeltiq

USA), Zeltiq Ireland Unlimited Company (Zeltiq Ireland), Zimmer MedizinSystems Corporation

(Zimmer USA), and Zimmer MedizinSysteme GmbH (Zimmer Germany) (collectively,

"Defendants"), alleges as follows:

### NATURE OF THE SUIT

1.      This is a civil action arising out of Defendants' patent infringement in violation of

the patent laws of the United States, 35 U.S.C. §§ 271 and 281–285.

### PARTIES

2.      BTL is a privately-held corporation organized and existing under the laws of

Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts

01752.

3.      On information and belief, Allergan plc is an Irish corporation with its principal place of business at Clonshaugh Business and Technology Park, Coolock, Dublin, D17 E400, Ireland. On information and belief, Allergan plc is the parent company of three other Defendants—Allergan USA, Zeltiq USA, and Zeltiq Ireland.

4.      On information and belief, Allergan USA is a publicly held corporation organized and existing under the laws of Delaware with a place of business at 5 Giralda Farms, Madison, New Jersey 07940. On information and belief, Allergan USA is an indirect, wholly-owned subsidiary of Allergan plc.

5.      On information and belief, Zeltiq USA is a publicly held corporation organized and existing under the laws of the State of Delaware with its principal place of business at 4410 Rosewood Dr., Pleasanton, California 94588-3050. On information and belief, Zeltiq USA was acquired by Allergan plc in 2017 and exists as an Allergan plc subsidiary.

6.      On information and belief, Zeltiq Ireland is an Irish corporation with its principal place of business at Galway West Business Park, Western Distributor Road, Knocknacarra, Galway.

7.      On information and belief, Zimmer USA is a privately held corporation with its principal place of business at 3 Goodyear, Suite B, Irvine, California 92618.

8.      On information and belief, Zimmer Germany is a foreign company organized and existing under the laws of Germany with its principal place of business at Junkersstraße 9, 89231 Neu-Ulm, Germany.

9.      On information and belief, the acts of Allergan USA, Zeltiq USA, Zeltiq Ireland, Zimmer USA, and Zimmer Germany complained of herein were done at the direction of, with the authorization of, or with the cooperation, participation, or assistance of, or at least in part for

the benefit of, Allergan plc. For example, Allergan plc offers for sale and advertises the sale and use of the CoolTone device as part of a "Trusted Allergan Partnership," in which doctors and patients benefit from the "confidence and support of an Allergan partnership." *See* Exhibits 1–2.

## JURISDICTION AND VENUE

10.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

11.     On information and belief, this Court has personal jurisdiction over Allergan plc because Allergan plc has committed an act of patent infringement under 35 U.S.C. § 271(a), (b), or (c) and intends a future course of conduct that includes acts of patent infringement in Delaware. On information and belief, acting in concert with the other Defendants, Allergan plc has purposefully directed the offers for sale, sale, importation, and distribution of the CoolTone device knowing that it will be sold and used in Delaware and has made the product available for sale in Delaware through an established distribution chain. BTL's cause of action for patent infringement arises out of these activities. These acts have led and will lead to foreseeable harm and injury to BTL in Delaware. On information and belief, Allergan plc has derived, and will derive, substantial revenue from the sale of the CoolTone device in Delaware.

12.     On information and belief, Allergan plc directs Allergan plc subsidiary Zeltiq Ireland to ship the CoolTone device into the United States to another subsidiary, Allergan USA.

13.     This Court has personal jurisdiction over Allergan USA because, among other things, Allergan USA is a corporation formed under the laws of the State of Delaware and has registered to do business in the State of Delaware. Allergan USA has thus consented to jurisdiction in Delaware.

14.     In addition, this Court has personal jurisdiction over Allergan USA because Allergan USA has committed an act of patent infringement under 35 U.S.C. § 271(a), (b), or (c) and intends a future course of conduct that includes acts of patent infringement in Delaware. These acts have led and will lead to foreseeable harm and injury to BTL in Delaware. For example, on information and belief, acting in concert with the other Defendants, Allergan USA offers for sale, sells, and distributes the CoolTone device in Delaware. *See* Exhibit 3.

15.     This Court also has personal jurisdiction over Allergan USA because Allergan USA has purposefully availed itself of the rights and benefits of Delaware law by engaging in systematic and continuous contacts with Delaware. On information and belief, Allergan USA maintains an office at 2711 Centerville Road, Suite 400, Wilmington, DE 19808. On information and belief, Allergan USA regularly and continuously transacts business within Delaware, including the offer to sell or selling the Accused Product in Delaware. On information and belief, Allergan USA continuously places its product into the stream of commerce, including the distribution and consumption in Delaware and throughout the United States, and BTL's cause of action for patent infringement arises from these actions. On information and belief, Allergan USA has derived, and will derive, substantial revenue from the sale of the CoolTone device in Delaware.

16.     This Court has personal jurisdiction over Zeltiq USA because, among other things, Zeltiq USA is a corporation formed under the laws of the State of Delaware and has registered to do business in the State of Delaware. Zeltiq USA has thus consented to jurisdiction in Delaware.

17.     In addition, this Court has personal jurisdiction over Zeltiq USA because Zeltiq USA has committed an act of patent infringement under 35 U.S.C. § 271(a), (b), or (c) and

intends a future course of conduct that includes acts of patent infringement in Delaware. These acts have led and will lead to foreseeable harm and injury to BTL in Delaware. For example, on information and belief, acting in concert with the other Defendants, Zeltiq USA offers for sale, sells, and distributes the CoolTone device in Delaware. The CoolTone website uses Zeltiq USA's CoolTone trademark and displays the company's address at 4410 Rosewood Drive, Pleasanton, CA 94588. *See* Exhibit 1.

18.     This Court also has personal jurisdiction over Zeltiq USA because Zeltiq USA has purposefully availed itself of the rights and benefits of Delaware law by engaging in systematic and continuous contacts with Delaware. On information and belief, Zeltiq USA regularly and continuously transacts business within Delaware, including by offering to sell, selling, and distributing the CoolTone device in Delaware. On information and belief, Zeltiq USA continuously places its product into the stream of commerce, including distribution and consumption in Delaware and throughout the United States, and BTL's cause of action for patent infringement arises from these actions. On information and belief, Zeltiq USA has derived, and will derive, substantial revenue from the sale of the CoolTone device in Delaware.

19.     This Court has personal jurisdiction over Zeltiq Ireland because, upon information and belief, acting in concert with the other Defendants, Zeltiq Ireland has purposefully imported the CoolTone device knowing that it will be offered for sale, sold, and used in Delaware, made the product available for sale in Delaware through an established distribution chain, and BTL's cause of action for patent infringement arises out of these activities. On information and belief, Zeltiq Ireland has derived, and will derive, substantial revenue from the sale of the CoolTone device in Delaware.

20.     This Court has personal jurisdiction over Zimmer USA because, upon information and belief, acting in concert with the other Defendants, Zimmer USA has purposefully imported the CoolTone device knowing that it will be sold and used in Delaware, made those products available for sale in Delaware through an established distribution chain, and BTL's cause of action for patent infringement arises out of these activities. On information and belief, Zimmer USA has derived, and will derive, substantial revenue from the sale of the CoolTone device in Delaware.

21.     This Court has personal jurisdiction over Zimmer Germany because, upon information and belief, Zimmer Germany, acting in concert with the other Defendants, has purposefully imported the CoolTone device knowing that it will be offered for sale, sold, and used in Delaware, made those products available for sale in Delaware through an established distribution chain, and BTL's cause of action for patent infringement arises out of these activities. On information and belief, Zimmer Germany filed a 510(k) application for CoolTone with the Food and Drug Administration (FDA). A 510(k) premarket notification is "made to FDA to demonstrate that the device to be marketed is at least as safe and effective, that is, substantially equivalent, to a legally marketed device . . . that is not subject to [premarket approval]." U.S. Food & Drug Administration, "510(k) Premarket Notification" (citations omitted). On information and belief, Zimmer Germany has derived, and will derive, substantial revenue from the sale of the CoolTone device in Delaware.

22.     Venue is proper in this District under 28 U.S.C. § 1400 and 28 U.S.C. § 1391.

## BACKGROUND

23.     BTL is an innovator and world leader in non-invasive products and treatments for the aesthetics and physiotherapy industries. Since its founding in 2008, BTL's business has

centered around the innovation, development, and implementation of equipment and treatments for non-invasive body contouring and physiotherapy. *See, e.g.*, Exhibit 4.

24.     BTL and its affiliate companies developed devices that use high intensity focused electromagnetic energy—known as HIFEM®—for use in non-invasive body sculpting and muscle building. *See id.* BTL was the first to apply its proprietary HIFEM® technology to non-invasive aesthetic treatments and the first to develop protocols for using the technology for aesthetic therapies. For example, BTL developed revolutionary hardware and protocols that optimized the application of HIFEM® technology for non-invasive muscle building and body sculpting.

25.     BTL markets and distributes its non-invasive aesthetic body-contouring devices that incorporate its proprietary HIFEM® technology, muscle toning protocols, and applicators in the United States, including, for example, the FDA-cleared EMSCULPT® device.



26.     In June 2018, BTL received FDA clearance for EMSCULPT® and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, and development of firmer abdomen; and strengthening, toning, and firming of buttocks and thighs. In October 2018, BTL received FDA clearance adding an indication for arms; in July 2019, BTL received FDA clearance adding an indication for calves.

27.     EMSCULPT® uses HIFEM® technology to induce powerful muscle contractions not achievable through voluntary contractions. BTL's proprietary protocols create supramaximal muscle contractions that force muscle tissue to adapt to such extreme conditions, resulting in a non-invasive method of building muscle and body sculpting. *See id.* BTL has also invested its resources to develop optimal shapes and sizes for EMSCULPT® applicators, tailoring each applicator to the specific area to be targeted. For example, applicators intended for use to tone the abdomen or buttocks differ in size and shape to the applicators intended for use on calves.

28.     The aesthetic industry has recognized BTL's innovation, hailing it as having taken "the aesthetics industry by storm," praised BTL as being "the first to apply HIFEM® technology to aesthetics," and praised EMSCULPT® as having "transformed treatment protocols." *See id.* Patients identified BTL's EMSCULPT® as one of the 2019 "Most Worth It Procedures." Exhibit 5; *see also* Exhibit 6. EMSCULPT® has been described as "revolutionary," and "[o]ne of the newest and most progressive body-shaping technologies" on the market. Exhibits 7–8.

29.     BTL has also received a number of awards in the United States for its non-invasive aesthetic body-contouring devices that use HIFEM® technology. Exhibit 9; Exhibit 10.

30.     BTL's market success and superior performance are by-products of technological innovations over the past several decades. BTL continues to implement these innovations today,

for example, by continuing to obtain additional FDA indications for use of its non-invasive

aesthetic body-contouring devices.

## THE ASSERTED PATENTS

31.     On November 19, 2019, the United States Patent and Trademark Office (USPTO)

duly and lawfully issued U.S. Patent No. 10,478,634 (the "'634 patent"), entitled "Aesthetic

Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the

'634 patent is attached hereto as Exhibit 11. The '634 patent was exclusively licensed to BTL,

and BTL possesses the exclusive right of recovery for any past, present, or future infringements

of the '634 patent, including equitable relief and damages.

32.     On December 3, 2019, the USPTO duly and lawfully issued U.S. Patent No.

10,493,293 (the "'293 patent"), entitled "Aesthetic Method of Biological Structure Treatment by

Magnetic Field." A true and correct copy of the '293 patent is attached hereto as Exhibit 12. The

'293 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery

for any past, present, or future infringements of the '293 patent, including equitable relief and

damages.

33.     The '634 and '293 patents (collectively, "the Asserted Patents") are directed to

important features that have been incorporated into BTL's non-invasive aesthetic body-

contouring devices that include, for example EMSCULPT®, and their methods of use. These

patented features have contributed to the success of EMSCULPT® treatments in the United

States and have allowed BTL to establish itself as a market leader and respected educator in the

aesthetics industry. Exhibit 13.

## INFRINGING CONDUCT

34.     Allergan is a newcomer to the non-invasive aesthetic body-contouring industry

and entered the industry only recently in 2017 with its acquisition of Zeltiq USA. Exhibit 14. On

information and belief, Zeltiq USA was selling its cooling fat-reducing device, CoolSculpting, at the time of Allergan's acquisition of Zeltiq USA, thus allowing Allergan to enter the medical aesthetic market. *See id.* The Chief Commercial Officer of Allergan, Bill Meury, stated that the acquisition of Zeltiq USA "immediately expands [Allergan's] world-class global aesthetic business into the highly-complementary and fast-growing body contouring segment." *Id.*

**CoolTone**

35.     Allergan's CoolTone website explains that the CoolTone device uses "Magnetic Muscle Stimulation (MMS)" to "selectively deliver strong pulses to muscle tissues in a noninvasive manner. CoolTone's MMS technology penetrates into the muscle layers and induces involuntary muscle contractions . . . . to strengthen, tone, and firm the abdomen, buttocks, and thighs," which infringes the Asserted Patents. *See, e.g.*, Exhibit 15; Exhibit 16.



36.     On or about June 24, 2019, on information and belief, Defendants began to advertise the CoolTone device as a competitor to EMSCULPT®. Exhibits 16–17. For example,

Allergan issued a press release stating that "CoolTone strengthens, tones and firms the muscles in the treated area, resulting in a more defined and toned appearance." Allergan compared the performance of its CoolTone device to "the leading competitor," by which Allergan was plainly referring to EMSCULPT®. Exhibit 17.

37.     On or about June 24, 2019, Defendants announced FDA clearance of the CoolTone device. Exhibits 16–19. According to a June 24, 2019 Allergan press release, the "CoolTone device received FDA clearance for improvement of abdominal tone, strengthening of the abdominal muscles, and development for firmer abdomen. CoolTone is also indicated for strengthening, toning and firming of buttocks and thighs." Exhibit 16.

38.     On information and belief, Defendants did not receive FDA clearance for the CoolTone device until about November 15, 2019. Exhibit 20. FDA cleared the CoolTone device for the following indications for use: "[i]mprovement of abdominal tone, strengthening of the abdominal muscles, development for firmer abdomen" and "[s]trengthening, [t]oning and [f]irming of buttocks and thighs." *Id.* The 510(k) application submitted to the FDA by Zimmer Germany stated: "The CoolTone is a non-invasive therapeutic device. The device produces an electromagnetic field that interacts with the tissues of the human body. By muscle stimulation, the CoolTone helps to strengthen, tone and firm abdomen, buttocks and thighs. . . . Two large applicators are connected to the control unit and can be used simultaneously depending on the treatment. The device is a [*sic*] medical equipment that generates a magnetic field by applying a strong current to an applicator. The CoolTone is equipped with the securement system which is designed to maintain applicator position throughout treatment." *Id.* Zimmer Germany's 510(k) application also stated that the CoolTone device had treatment "parameters such as frequency,

time and intensity" that can be administered using "[t]hree pre-set treatment options" for the abdomen, buttocks, and thighs. *Id.*

39.     On information and belief, in June 2019, Defendants began offering its CoolTone device for sale. For example, an Allergan press release dated June 24, 2019, states "Allergan is now taking orders for the CoolTone device, and first units will ship early in the fourth quarter of this year." Exhibit 17; *see also* Exhibits 16, 21–22.



40.     On information and belief, on or about August 28, 2019, Defendants sent at least one EMSCULPT® customer an email, entitled "CoolTone vs EmSculpt detail (Allergan First special)," offering the CoolTone device for sale and providing a comparison to EMSCULPT®. Exhibit 23. For example, on information and belief, Defendants' email offered for sale a CoolTone device for $75,000, with the option of paying $10,000 up front, with an additional $15,000 before "shipment around December," the remainder to be paid off over 22 months with no interest. *Id.* Defendants also provided a brochure containing information comparing CoolTone to a competitor, presumably EMSCULPT®. *Id*.

41.     On information and belief, on or about August 23, 2019, Defendants began to send potential customers emails entitled "Are you getting excited for CoolTone?" Exhibit 24. Defendants' email noted that CoolTone manufacturing was "well underway" and that "[p]ractices around the country have pre-ore-ordered 426 CoolTone systems to date." *Id.* It also provided a list of materials to help Defendants' customers advertise CoolTone to patients. *Id.* The list included digital/social media and templates, magazine and billboard ad templates, website imagery, videos, and patient consultation materials. *Id.* On information and belief, the email also encouraged customers to advertise CoolTone treatments by posting on social media with the hashtag "#CoolTonebyCoolSculpting." *Id.*

42.     On information and belief, on or about June 24, 2019, Defendants invoiced and sold at least one CoolTone device within the United States. For example, on information and belief, Defendants sold one "CoolTone System" to a medical spa in Frisco, Texas.

43.     On information and belief, on or about December 6, 2019, Defendants sent a "CoolTone Update" by email to customers who had placed orders for a CoolTone device. Exhibit 25. For example, the "CoolTone Update" notified them of a production delay but stated that "expedited supply chain procedures are activated to ensure CoolTone systems ship as quickly as possible." *Id.* The email also stated that "because you have already paid your deposit, we will be sending you a rebate in the amount of $4,000 for our delays." *Id.* The CoolTone Update was signed by Brent Hauser, VP, Sales and Marketing, and Chris Woolf, VP, Sales. *Id.*

44.     On information and belief, on or about December 11, 2019, Defendants sent an email to customers entitled "CoolSculpting and CoolTone by Allergan." Exhibit 26. The email notified customers of Allergan's "largest marketing campaign . . . for Body Contouring" and

offered year end pricing incentives, including "Allergan Exclusive Bundle Pricing." *Id.* The email was accompanied by pictures of CoolTone and CoolSculpting devices. *Id.*

45.     At least one CoolTone device was imported into the United States and sold to a doctor for use on patients to tone muscle. For example, on information and belief, Defendants imported and sold a CoolTone device to Dr. Grant Stevens in Marina del Rey, California on or about December 20, 2019.



46.     On information and belief, the CoolTone device includes or performs each and every limitation of at least one claim of each Asserted Patent, either literally or under the doctrine of equivalents.

47.     On information and belief, Defendants direct customers to use the CoolTone device to practice each and every limitation of at least one claim of each Asserted Patent, either literally or under the doctrine of equivalents.

48.     On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the CoolTone device by its customers in a manner that directly infringes the Asserted Patents, knowing and intending that their customers will commit infringing acts in such a manner as to directly infringe the Asserted Patents. *See* Exhibit

1 (advertising CoolTone device to tone, firm, and strengthen abdomen, buttocks, and thighs using magnetic intensity). For example, on information and belief, Defendants provide explicit instructions to their customers regarding the use of the CoolTone device, and the instructions describe and encourage methods of using the CoolTone device in a manner that infringes the Asserted Patents.

### CoolTone & CoolSculpting

49.     On information and belief, Defendants market and distribute devices designed to perform a cosmetic procedure called "CoolSculpting." *See* Exhibit 27. On information and belief, CoolSculpting is a noninvasive procedure indicated for cold-assisted lipolysis (breakdown of fat) via thermal contact of the device with a patient's skin. *See* Exhibit 28.

50.     On information and belief, Defendants advertise and promote the use of the CoolTone device alone or in conjunction with CoolSculpting in a manner that infringes at least one claim of each Asserted Patent. For example, a CoolTone brochure advertises the use of the CoolTone device alone or in conjunction with CoolSculpting with the slogan: "Eliminate fat with CoolSculpting®. Tone muscle with CoolTone™." Exhibit 29 (CoolTone brochure); *see also* Exhibit 30 (advertising CoolSculpting device to reduce fat using "fat-freezing technology"); Exhibit 31 (aesthetic professional's website encouraging CoolTone in conjunction with CoolSculpting). Defendants' CoolSculpting website also advertises CoolTone in conjunction with CoolSculpting.



51.     On information and belief, Defendants actively encourage, promote, provide

instruction for, and support the use of the CoolTone device alone or in conjunction with

CoolSculpting by its customers in a manner that directly infringes at least one claim of each

Asserted Patent, knowing and intending that their customers will commit infringing acts in such

a manner as to directly infringe the Asserted Patents. On information and belief, Defendants have

had knowledge of the Asserted Patents, the infringing nature of the CoolTone device, and

corresponding methods of treatment since at least November 20, 2019, if not earlier. For

example, the '634 patent issued on November 19, 2019; BTL's EMSCULPT® website states that

EMSCULPT® "may be subject to one or more U.S. or foreign patents or pending applications";

and on or about November 20, 2019, BTL's European affiliate initiated a formal inspection of

Zimmer Germany's production center based on one of BTL's German Utility Models having

claims directed to EMSCULPT®.  Defendants have had knowledge of the Asserted Patents, at the

latest, via this complaint.

52.     On information and belief, Defendants direct, instruct, encourage, and advertise to

their customers to use the CoolTone device alone or in conjunction with CoolSculpting. These

directions, instructions, and advertisements describe and encourage methods of using the

CoolTone device in a manner that infringes at least one claim of each Asserted Patent. On

information and belief, customers using the CoolTone device for toning muscle in conjunction

with CoolSculpting will practice each and every limitation of at least one claim of each Asserted

Patent, either literally or under the doctrine of equivalents. *See* Exhibit 29.

53.     On information and belief, Defendants advertise the sale and use of the CoolTone

device alone or in conjunction with the sale and use of CoolSculpting, including the

"[c]ombination therapy" of CoolTone and CoolSculpting treatments. Exhibit 32; Exhibit 1;

Exhibit 29.



54.     On information and belief, on or about December 20, 2019, Defendants imported

into the United States and sold a CoolTone device to a Dr. Grant Stevens in Marina del Rey,

California. On information and belief, Dr. Stevens intends to use CoolTone alone and in

conjunction with CoolSculpting. In an Instagram video dated December 20, 2019, Dr. Stevens

stated "Why wouldn't your doctors want to offer a non-surgical way to increase muscle tone and

strength and core while they are doing CoolSculpting? I see this as a combination. I'm offering

CoolSculpting for fat reduction and CoolTone for muscle tone…. They should couple them."

*Available at* https://www.instagram.com/drgrantstevens/?hl=en, last visited Dec. 21, 2019. Dr.

Steven's Instagram post noted "Filming for Cool Tone today. First commercial installation in the

universe! Tone and Freeze". *Id.*





55.     On information and belief, customers using the CoolTone device alone or in conjunction with CoolSculpting, as directed by Defendants, practice each and every limitation of at least one claim of each Asserted Patent, either literally or under the doctrine of equivalents.

56.     On information and belief, Defendants also contribute to the infringement of the Asserted Patents by the offer for sale, sale, or importation within the United States of the CoolTone device. On information and belief since at least November 20, 2019, if not earlier, Defendants have had knowledge of the Asserted Patents, the infringing nature of the CoolTone device, and corresponding methods of treatment. For example, BTL's EMSCULPT® website states that EMSCULPT® "may be subject to one or more U.S. or foreign patents or pending applications," and on or about November 20, 2019, BTL's European affiliate initiated a formal inspection of Zimmer Germany's production center based on one of BTL's German Utility Models directed to EMSCULPT®. Defendants have had knowledge of the Asserted Patents, at the latest, via this complaint. On information and belief, Defendants are aware that the CoolTone device is especially adopted for the claimed methods described in the Asserted Patents, embody a material part of the inventions claimed in the Asserted Patents, and is not a staple article of commerce suitable for non-infringing use.

57.     Defendants' importation, use, offer for sale, and/or sale within the United States of the CoolTone device is continuing. Exhibit 33. Moreover, Defendants have continued to distribute product literature and website materials encouraging their customers and others to use their products in the customary and intended manner that infringes the Asserted Patents. *E.g.*, Exhibit 34.

58.     On information and belief, since they have had knowledge of the Asserted Patents, Defendants' infringement has been and continues to be willful.

59.     BTL has been injured by Defendants' infringement of the Asserted Patents and will suffer irreparable harm unless Defendants are enjoined from infringing the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,478,634**

60.     BTL repeats and re-alleges paragraphs 1–59 as if fully set forth herein.

61.     Defendants have, and will continue to, induce infringement of one or more claims of the '634 patent, including for example, claims 1 and 22, under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing the CoolTone device in the United States and encouraging their customers to use the device in a manner that directly infringes the '634 patent. On information and belief, Defendants have been aware of the '634 patent since at least November 20, 2019, if not before. On information and belief, Defendants have, and will continue to intentionally encourage acts of direct infringement with knowledge of the '634 patent and knowledge that their acts are encouraging infringement.

62.     Defendants have, and will continue to, contributorily infringe one or more claims of the '634 patent, including for example, claims 1 and 22, under 35 U.S.C. § 271(c) by offering to sell, selling, or importing the CoolTone device in the United States. On information and belief, Defendants were aware of the '634 patent since at least November 20, 2019, if not before. On information and belief, Defendants have known that the CoolTone device is designed for a use that infringes one or more claims of the '634 patent, and the CoolTone device lacks a substantial non-infringing use.

63.     Defendants' infringement of the '634 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

64.     Defendants' inducement of infringement and contributory infringement of the '634 patent has been willful, since at least November 20, 2019. On information and belief, Defendants have been aware of the '634 patent since at least its issuance and have willfully infringed the '634 patent, knowing such conduct to be in violation of 35 U.S.C. § 271. On information and belief, Defendants will continue to willfully infringe the '634 patent.

65.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 patent.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,493,293

66.     BTL repeats and re-alleges paragraphs 1–65 as if fully set forth herein.

67.     Defendants have, and will continue to, induce infringement of one or more claims of the '293 patent, including for example, claims 6 and 14, under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, and/or importing the CoolTone device in the United States and encouraging their customers to use the device in a manner that directly infringes the '293 patent. On information and belief, Defendants have been aware of the '293 patent since at least December 3, 2019, if not before. On information and belief, Defendants have, and will continue to intentionally encourage acts of direct infringement with knowledge of the '293 patent and knowledge that their acts are encouraging infringement.

68.     Defendants have, and will continue to, contributorily infringe one or more claims of the '293 patent, including for example, claims 6 and 14, under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing the CoolTone device in the United States. On information and belief, Defendants were aware of the '293 patent since at least December 3, 2019, if not before. On information and belief, Defendants have known that the CoolTone device is designed for a use that infringes one or more claims of the '293 patent, and the CoolTone device lacks a substantial non-infringing use.

69.     Defendants' infringement of the '293 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

70.     Defendants' inducement of infringement and contributory infringement of the '293 patent has been willful, since at least December 3, 2019. On information and belief, Defendants have been aware of the '293 patent since at least its issuance and have willfully infringed the '293 patent, knowing such conduct to be in violation of 35 U.S.C. § 271. On information and belief, Defendants will continue to willfully infringe the '293 patent.

71.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '293 patent.

## PRAYER FOR RELIEF

WHEREFORE, BTL requests entry of judgment against Defendants as follows:

A.     A judgment that Defendants have infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b)–(c);

B.     An order permanently enjoining Defendants, its officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

C.     An award of damages for infringement of the Asserted Patents, with prejudgment interest and costs, said damages to be trebled by reason of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

D.     A judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

E.     A determination that this case is "exceptional" under 35 U.S.C. § 285, and an award of BTL's reasonable attorneys' fees;

F.      An award of pre- and post-judgment interest of any monetary damages at the highest rate allowed by law;

G.      An award of BTL's costs and expenses in this action; and

H.      For such other relief as the Court may deem just and proper.

## JURY DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff BTL Industries, Inc. respectfully demands a trial by jury of any issues triable of right by a jury.

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
J.C. Rozendaal
Michael E. Joffre
Chandrika Vira
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Ave., NW, Suite 600
Washington, DC 20005
(202) 371-2600

Dated: December 26, 2019