IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTL INDUSTRIES, INC., | ) | |
| | ) | **Redacted- Public Version** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-2356-CFC |
| | ) | |
| ALLERGAN USA, INC., | ) | |
| ALLERGAN, INC., ZELTIQ | ) | |
| AESTHETICS, INC., ZIMMER | ) | |
| MEDIZINSYSTEMS | ) | |
| CORPORATION, and ZIMMER | ) | |
| MEDIZINSYSTEME GMBH, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## BTL'S OPPOSITION TO ALLERGAN'S
## MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:
J.C. Rozendaal
Michael E. Joffre
Chandrika Vira
STERNE, KESSLER, GOLDSTEIN & FOX
   PLLC
1100 New York Ave., NW, Suite 600
Washington, DC 20005
(202) 371-2600

April 27, 2020

Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com

*Attorneys for Plaintiff BTL Industries, Inc.*

# **TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ....................................2

II.   SUMMARY OF ARGUMENT ......................................................................2

III.  STATEMENT OF FACTS ............................................................................4

      A.    BTL Is an Exclusive Licensee with All Substantial Rights in the
            Asserted Patents ...............................................................................4

      B.    BTL's Complaint Pleads Facts Describing Allergan's
            Infringement .....................................................................................5

IV.   ARGUMENT .................................................................................................8

      A.    BTL Is an Exclusive Licensee with Standing To Enforce the
            Patents-in-Suit on Its Own ...............................................................8

      B.    BTL's Complaint Provides Adequate Notice and Pleads
            Sufficient Facts To Support Its Infringement Allegations ................10

            1.    BTL's Complaint Details Functionalities of the
                  CoolTone and CoolSculpting Products Sufficient To
                  Give Notice of Direct Infringement ..........................................10

            2.    Allergan's Promotional Materials Provide Sufficient
                  Basis To Infer Knowledge of the Asserted Patents and
                  Specific Intent To Induce Infringement ....................................15

            3.    CoolTone Has No Substantial Non-Infringing Uses ................20

            4.    BTL's Complaint Pleads Facts That Support a Willful
                  Infringement Claim .................................................................22

V.    CONCLUSION ...........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Align Tech., Inc. v. 3Shape A/S*,
    339 F.3d 435 (D. Del. 2018)........................................................................15, 18

*Azure Networks, LLC v. CSR PLC*,
    771 F.3d 1336 (Fed. Cir. 2014) .....................................................................2, 9

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) .........................................................................18

*BioMérieux, S.A. v. Hologic, Inc.*,
    No. 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018)...................15, 17

*Boston Sci. Corp. v. Nevro Corp.*
    415 F. Supp. 3d 482 (D. Del. 2019)............................................................12, 21

*California Inst. of Computer Assisted Surgery Inc.*
    *v. Med-Surgical Servs., Inc.*,
    No. C 10-05067 CS, 2011 WL 672709 (N.D. Cal. Feb. 16, 2011) ...................18

*Canon, Inc. v. TCL Elecs. Holdings Ltd.*,
    No. 2:18-cv-00546-JRG, 2020 WL 1478356
    (E.D. Tex. Mar. 25, 2020)..................................................................................17

*DermaFocus LLC v. Ulthera, Inc.*,
    201 F. Supp. 3d 465 (D. Del. 2016)............................................................*passim*

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018) ..............................................................3, 10, 11

*Election Sys. & Software, LLC v. Smartmatic USA Corp.*,
    No. 18-1259-RGA, 2019 WL 1040541 (D. Del. Mar. 5, 2019)..................11, 12

*Express Mobile, Inc. v. Liquid Web, LLC*,
    Nos. 1:18-cv-01177-RGA....................................................................................14

ii

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
  935 F. Supp. 2d 772 (D. Del. 2013)................................................................22

*Groove Digital, Inc. v. King.com, Ltd.*,
  No. 1:18-cv-00836-RGA, 2018 WL 6168615
  (D. Del. Nov. 26, 2018) ...................................................................................15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016).....................................................................................22

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
  797 F.3d 1025 (Fed. Cir. 2015) ..........................................................................9

*Kyowa Hakka Bio. Co. v. Ajinomoto Co.*,
  No. 17-313, 2018 WL 834583 (D. Del. Feb. 12, 2018) ....................................16

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
  814 F.3d 1343 (Fed. Cir. 2016) ..........................................................................8

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018) ..............................................................3, 15, 21

*NextStep, Inc. v. Comcast Cable Commc'ns, LLC*,
  No. 19-1031-RGA-SRF, 2019 WL 5626647 (D. Del. Oct. 31, 2019) ..............21

*Novatel Wireless, Inc. v. Franklin Wireless Corp.*,
  No. 10cv2530-CAB (JMA), 2012 WL 12845615
  (S.D. Cal. July 19, 2012) .................................................................................16

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ......................................................................10, 21

*Rhodes Pharm. L.P. v. Indivior, Inc.*,
  No. 16-1308, 2018 WL 326405 (D. Del. Jan. 8, 2018) ....................................20

*Telecomm Innovations, LLC v. Ricoh Co.*,
  966 F. Supp. 2d 390 (D. Del. 2013)............................................................16, 18

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
  994 F.2d 870 (Fed. Cir. 1991) ............................................................................9

iii

**Rules**

Fed. R. Civ. P. 12(b)(1)...........................................................................2, 8

Fed. R. Civ. P. 12(b)(6)............................................................................2

BTL Industries, Inc. is the world leader in non-invasive body-contouring technology. BTL's Emsculpt device uses highly focused electromagnetic energy to induce powerful muscle contractions to help tone and strengthen abdominal and other muscles. As part of BTL's development of its Emsculpt device, BTL secured an exclusive license on patents that cover the device and retains all substantial rights in the patents. Allergan[1] is aware of this history because Allergan sought to copy the Emsculpt device and steal BTL's market share.

Facing declining revenues, Allergan announced in July 2019 that it would launch its own body-contouring product, the CoolTone product. Allergan marketed its CoolTone product as a cheaper version of BTL's Emsculpt device. Allergan's sales team explained in detail to customers how the CoolTone muscle-contraction treatment protocol was similar to that of the Emsculpt device. Indeed, Allergan gained FDA clearance for the CoolTone product by arguing that it was substantially equivalent to another product (the emFieldPro), which in turn got FDA approval because it was substantially equivalent to the Emsculpt device. Moreover, the CoolTone product is configured to provide only three pre-set treatment protocols that directly map onto the claims of BTL's patents. Despite all of this, Allergan asserts that BTL's complaint does not provide fair notice of

---

[1] Allergan USA, Inc., Allergan, Inc. and Zeltiq Aesthetics, Inc. are collectively referred to as "Allergan."

BTL's infringement allegations. That argument cannot be squared with the detailed allegations in BTL's complaint or with Allergan's history of copying the Emsculpt device. Allergan's motion to dismiss should be denied.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

BTL filed a complaint alleging that Allergan plc, Allergan USA, Inc., Zeltiq Aesthetics, Inc., Zeltiq Ireland Unlimited Company, Zimmer MedizinSystems Corporation, and Zimmer MedizinSysteme GmbH infringe two U.S. Patents—Nos. 10,478,634 ("the '634 patent") and 10,493,293 ("the '293 patent"). D.I. 1. BTL and Allergan subsequently agreed to dismiss Allergan plc and Zeltiq Ireland Unlimited from the action and add Allergan, Inc. as a defendant. D.I. 13. Allergan moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.I. 15.

## II.   SUMMARY OF ARGUMENT

1.     BTL has all substantial rights to the asserted patents. Specifically, BTL's exclusive license grants to BTL: (i) ██████████████████████████; (ii) █████████████████████████████████████████; and (iii) ███████████████████████████████. Indeed, ███ ████████████████████████████████████. Accordingly, BTL has standing to sue for infringement on the '634 and '293 patents. *See Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014).

2

2.     BTL's complaint provides Allergan with detailed notice of the directly infringing conduct. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). The complaint identifies the accused products and describes how they function—in pictures and in exhibits. The complaint also provides exemplary patent claims that Allergan's CoolTone product infringes—method claims that read directly on the operation of the CoolTone product. That is more than is required to overcome a motion to dismiss. *See Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018).

3.     BTL's complaint also describes the facts demonstrating that Allergan had knowledge of the patents, encouraged customers to use the CoolTone product in an infringing manner, and had the specific intent to induce infringement. Allergan's promotional materials, including emails to Emsculpt customers, directly compare Allergan's CoolTone product to BTL's Emsculpt device and encourage customers to use the CoolTone product in an infringing manner. *See DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016). BTL's website explains that the Emsculpt device is covered by U.S. patents. BTL's European affiliate had previously initiated a formal inspection of the manufacturer of the CoolTone product based on one of BTL's German Utility Models for the Emsculpt device. Allergan would have had to be willfully blind not to be aware of BTL's

3

patents after copying BTL's device and after BTL brought legal proceedings in Germany.

4.      Allergan's infringement is willful. Allergan has been copying the Emsculpt device from the start. And courts have made clear that the pleading standard for willfulness is even more lax than that for pleading indirect infringement. *See DermaFocus*, 201 F. Supp. 3d at 473.

Because BTL has standing to enforce the patents-in-suit and has pleaded more than enough facts to state plausible claims of direct, indirect, and willful infringement, the Court should deny Allergan's motion to dismiss.

## III.   STATEMENT OF FACTS

### A.   BTL Is an Exclusive Licensee with All Substantial Rights in the Asserted Patents

Medical Technologies CZ a.s.[2] granted BTL an exclusive, ███████████ ██████ license to the asserted patents. Ex. 1, §§ 1.2, 3, 4; *id.* Sch. A (listing applications 16/034,793 and 15/954,783, which issued as the '634 and '293 patents). The license gives BTL the exclusive right to ███████████████ ██████████████████████████████, as well as the ability to

---

[2] Medical Technologies CZ a.s. merged with BTL Medical Technologies S.R.O. during which Medical Technologies CZ a.s.'s assets—including the patents— passed to BTL Medical Technologies S.R.O. Ex. 2 at 1.



. Ex. 1,

§§ 3.1, 4. Indeed, BTL ███████████████ the asserted patents, including

. *Id.* § 4.

. *Id.* § 3.1.

### B.   BTL's Complaint Pleads Facts Describing Allergan's Infringement

BTL's complaint identifies the accused devices, alleges that when used, the

devices meet each and every element of at least one claim of each of the '293 and

'634 patents, and identifies exemplary infringed claims for each patent. Compl.

¶¶ 35, 38–39, 46, 49, 52, 56–57, 61–62 (claims 1 and 22 of the '634 patent), 67–68

(claims 6 and 14 of the '293 patent).

For example, the complaint describes how the accused products—the

CoolTone and CoolSculpting products—operate. The 510(k) premarket

notification filed with the FDA and attached to BTL's complaint describes

CoolTone as a "device [that] produces an electromagnetic field that interacts with

the tissues of the human body. By muscle stimulation, the CoolTone helps to

strengthen, tone and firm abdomen, buttocks and thighs." *Id.* ¶ 38. The complaint

further describes the use of "[t]wo large applicators [that] are connected to the

5

control unit and can be used simultaneously depending on the treatment. The device is a [*sic*] medical equipment that generates a magnetic field by applying a strong current to an applicator. The CoolTone is equipped with the securement system which is designed to maintain applicator position throughout treatment." *Id.* The CoolTone product also has treatment "parameters such as frequency, time and intensity" that are administered using "three pre-set treatment options." *Id.*

The complaint alleges that "the CoolTone device includes or performs each and every limitation of at least one claim of each Asserted Patent" and provides exemplary claims that are infringed. *Id.* ¶ 46. Further, the complaint alleges that Allergan directs, encourages, promotes, and provides instruction for customers to use the CoolTone product in an infringing manner by providing explicit instructions to its customers to use the CoolTone product in a manner that infringes the asserted patents, including using CoolTone in combination with CoolSculpting. *Id.* ¶¶ 47, 48, 52. BTL alleges that Allergan continues this infringing conduct by distributing product literature and website materials encouraging customers to use its "products in the customary and intended manner," which results in infringement because of the way that Allergan has configured the three preset settings on the CoolTone product. *Id.* ¶¶ 38, 57.

6

BTL pleads facts plausibly supporting the inference that Allergan had knowledge of the patents. *Id.* ¶ 9. Allergan began advertising the CoolTone product in June 2019 to compete with the Emsculpt device, which Allergan referred to as "the leading competitor." *Id.* ¶ 36; *id.* Ex. 17. In fact, the Allergan and BTL devices are the only major players in the market. In an August 2019 email, Allergan expressly compared "CoolTone vs. Emsculpt," stating "[a]s long as the device uses an Electromagnetic field to produce supramaximal contractions, muscle strengthening, toning and tightening will happen. Both CoolTone and Emsculpt accomplish this." *Id.* ¶ 40; *id.* Ex. 23. These facts, combined with the statements on BTL's website that Emsculpt "may be subject to one or more U.S. or foreign patents or pending applications" and an enforcement action against the CoolTone product based on German intellectual property rights directed to the Emsculpt device gives rise to the plausible inference that Allergan had knowledge of the patents. *Id.* ¶¶ 51, 56.

BTL's complaint also alleges that Allergan had the requisite intent to induce infringement by pointing to advertisements that "advertise and promote the use of the CoolTone device alone or in conjunction with CoolSculpting in a manner that infringes" the asserted patents. *Id.* ¶ 50. As for contributory infringement, BTL alleges that "Defendants have known that the CoolTone device is designed for a

use that infringes one or more claims of the [asserted patents], and the CoolTone device lacks a substantial non-infringing use" and refers back to its infringing functionality. *Id.* ¶¶ 62, 68.

## IV.   ARGUMENT

### A.   BTL Is an Exclusive Licensee with Standing To Enforce the Patents-in-Suit on Its Own

An exclusive licensee may maintain a suit for infringement without joining the patentee if it retains "all substantial rights" in the asserted patents. *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1349 (Fed. Cir. 2016). The right to sue for infringement is "critical" in determining whether an exclusive licensee has standing to sue without joining the patentee. *Id.* at 1350. Courts may also consider other factors, including the right of the licensor to receive damages resulting from infringement suits, the duration of the license to the licensee, and the ability of the licensor to supervise the licensee's activities. *Id.* Here, BTL's license[3] transferred all substantial rights in the patents to BTL.

---

[3]Although in responding to Allergan's motion to dismiss for lack of standing under Rule 12(b)(1), BTL has produced the pertinent license agreement and other documents beyond its complaint to demonstrate standing, the complaint also alleges the key facts that the patents were exclusively licensed to BTL and that BTL possesses the exclusive right to recovery for infringement. Compl. ¶¶ 31, 32.

First, BTL has the " ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████ ." Ex. 1, § 4. The license agreement explicitly states that BTL is

" ███████████████████████████████████████████████

███████████████ ." *Id.* § 3.1; *see also Vaupel Textilmaschinen KG v.*

*Meccanica Euro Italia SPA*, 994 F.2d 870, 875 (Fed. Cir. 1991) (right to sue for

infringement is particularly dispositive). ████████████████████████ .

*Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1032 (Fed. Cir. 2015)

(stating licensor's retention of rights to sue infringers is "the most important

factor" to determine whether exclusive license transfers all substantial rights).

Second, BTL has " ████████████████████████████████

████████████ " the patents. Ex. 1, § 3.1. Third, BTL also has ████████████

████████████████████ . *Id.* Finally, BTL has the right to ████████████████

████████████████████████████████████████████████ . *Id.* § 4. *See*

*also Azure*, 771 F.3d at 1347 (holding that all substantial rights were transferred

when licensee had "the right to enforce, to license, to control the licensing and

litigation, to sublicense, [and] to practice exclusively" the patent).

Significantly, the license agreement makes ████████████████

███████████████████████████████████████████████████████████

████" Ex. 1, § 3.1 (emphasis added). This puts to rest any argument that the

license did not transfer all substantial rights. *See Vaupel*, 944 F.2d at 874 ("To

determine whether a provision in an agreement constitutes an assignment or a

license, one must ascertain the intention of the parties and examine the substance

of what was granted."). Allergan's 12(b)(1) motion should therefore be denied.

### B. BTL's Complaint Provides Adequate Notice and Pleads Sufficient Facts To Support Its Infringement Allegations

A complaint need only "state a claim to relief that is plausible on its face,"

*Disc Disease*, 888 F.3d at 1260, and "raise a reasonable expectation that discovery

will reveal evidence of the necessary element." *Phillips v. County of Allegheny*,

515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted). BTL's

complaint easily meets this threshold.

### 1. BTL's Complaint Details Functionalities of the CoolTone and CoolSculpting Products Sufficient To Give Notice of Direct Infringement

The Federal Circuit held recently in *Disc Disease* that a complaint for patent

infringement need only identify the accused products and allege that the accused

products meet the claim elements of at least one claim of the asserted patent(s).

888 F.3d at 1260. "Specific facts are not necessary; the statement need only give

the defendant fair notice of what the … claim is and the ground upon which it rests." *Id.* (alteration in original) (internal quotation marks and citations omitted). Under *Disc Disease*, identifying the specific products and patents in the complaint suffices to give the defendant "fair notice of infringement of the asserted patents"; a plaintiff need not explain exactly *how* the accused products infringe the claims. *Id.*

BTL's complaint easily meets that standard for giving Allergan notice of the accused infringing conduct. It identifies the accused products: the CoolTone product alone and the CoolTone product used in conjunction with the CoolSculpting product. *E.g.*, Compl. ¶¶ 35, 46, 49, 52. BTL included photos of the accused products within the complaint or in attached exhibits. BTL also attached the asserted patents to the complaint and identified exemplary claims of the asserted patents that Allergan's products infringed—claims 1 and 22 of the '634 patent and claims 6 and 14 of the '293 patent. *E.g.*, *id.* ¶¶ 39, 61–62, 67–68; *id.* Exs. 11, 12, 29. BTL further alleged that when Allergan's customers "use their products in the customary and intended manner," they infringe the asserted patents. *Id.* ¶ 57; *see also id.* ¶¶ 46, 52, 55. BTL also cited social media posts by a U.S. doctor who expressed his intent to use the CoolTone and CoolSculpting products together to "increase muscle tone and strength" and reduce fat. *Id.* ¶ 54. Nothing

11

more is required to state a claim for patent infringement. *See Election Sys. & Software, LLC v. Smartmatic USA Corp.*, No. 18-1259-RGA, 2019 WL 1040541, at *1 (D. Del. Mar. 5, 2019) (denying motion to dismiss infringement claims when complaint identified accused products and attached copies of the patents). Although the technology at issue here is somewhat more sophisticated than that at issue in *Disc Disease*, the claims are straightforward enough that the complaint's description of the operation of the CoolTone product and the identification of exemplary claims gives Allergan fair notice of infringement.

BTL's complaint also does not suffer from the deficiencies of the claims of infringement dismissed in *Boston Scientific Corp. v. Nevro Corp.*, a case heavily relied on by Allergan in its motion. 415 F. Supp. 3d 482, 489–90 (D. Del. 2019). In *Boston*, the plaintiff simply provided "general information about the accused products" by citing in footnotes to internet links to voluminous documents. *Id.* The court concluded that the plaintiff "ma[de] no attempt" to connect the accused products to certain of the asserted claims in its complaint and that the Court should not have to "parse 144 pages of exhibits to determine if they state facts sufficient to demonstrate a plaintiff's entitlement to relief." *Id.* at 490. On that basis, the Court dismissed certain of the direct infringement claims. In contrast, where the plaintiff

described the accused systems in the complaint, the Court concluded the plaintiff stated a plausible claim for those counts. *Id.* at 490–91.

BTL's complaint pleads facts with sufficient detail to be akin to the claims that the *Boston* court found gave sufficient notice of infringement. BTL's complaint detailed how the infringing CoolTone and CoolSculpting products operate, explaining that the CoolTone product uses magnetic muscle stimulation to deliver magnetic pulses to muscle tissue to strengthen, tone, and firm the abdomen, buttocks, and thighs. Compl. ¶ 35. *See also DermaFocus*, 201 F. Supp. 3d at 469 ("by 'specifically identifying . . . products' which 'perform the same unique function as [the] patented system,'" the "plaintiff may have a plausible claim for direct infringement.") (alterations in original) (citation omitted). The complaint describes how the CoolTone product "produces an electromagnetic field," uses "[t]wo large applicators" that can be used during treatment, and has "treatment 'parameters such as frequency, time and intensity' that can be administered using '[t]hree pre-set treatment options' for the abdomen, buttocks, and thighs." Compl. ¶ 38 (quoting *id.* Ex. 20). BTL's complaint also outlines the FDA-cleared indications for CoolTone—which are identical to that of the Emsculpt device—and alleges that the CoolTone product's treatment parameters of "frequency, time and intensity," administered using the "three pre-set treatment options" for application

13

to the abdomen, buttocks, and thighs, infringes the asserted patents. *Id.*; *see also id.*
¶ 35 (citing description on Allergan's website of use of CoolTone device "to
strengthen, tone, and firm the abdomen, buttocks, and thighs" via magnetic muscle
stimulation).

BTL's complaint also describes the function of the CoolSculpting product,
which uses cold-assisted lipolysis to freeze fat upon contact with a patient's skin.
*Id.* ¶ 49. Finally, BTL attached Allergan's 510(k) premarketing applications for its
products required by the FDA, which also describe the operation of the accused
products. *Id.* ¶¶ 38, 49 (citing *id.* Exs. 20, 28).

These allegations, combined with a description of exemplary claims of the
asserted patents, provide Defendants with sufficient notice. *See Express Mobile,
Inc. v. Liquid Web, LLC*, Nos. 1:18-cv-01177-RGA et al., 2019 WL 1596999, at
*1–2 (D. Del. Apr. 15, 2019) (denying motion to dismiss when complaint only
identified accused products via websites). The infringing features of the CoolTone
and CoolSculpting products are described in the very titles of the patents,
"Aesthetic Method of Biological Structure Treatment by Magnetic Field" (Compl.
¶¶ 31, 32), in the claims of the patents attached to the complaint, and in the
description of the commercial embodiment of the patents, the Emsculpt device (*id.*
¶¶ 24, 27). *DermaFocus*, 201 F. Supp. 3d at 468 ("[A] court may consider the

14

pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference" to determine if a complaint is sufficient). For example, exemplary claim 1 of the '634 patent recites "a method for toning muscles in a patient using time-varying magnetic fields . . . wherein the time-varying magnetic field is applied to the body region . . . sufficient to cause a muscle contraction in the body region." Compl. Ex. 11 (claim 1); *see also* exemplary claim 14 of the '293 patent, *id.* Ex. 12 (claim 14). Allergan cannot reasonably argue it does not have notice of the accused infringing conduct.

Contrary to what is required by law, Allergan wishes for BTL to plead facts establishing precisely how each and every element of an asserted claim is met. That is not required. *See Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 446 (D. Del. 2018) ("To require anything more at this stage of the case would require the equivalent of infringement contentions, which is more than the law demands."); *accord Nalco*, 883 F.3d at 1350. Indeed, it is plain from the reading of Allergan's own motion that Allergan has notice of the accused products, the asserted patents, and the accused infringing conduct.

### 2.   Allergan's Promotional Materials Provide Sufficient Basis To Infer Knowledge of the Asserted Patents and Specific Intent To Induce Infringement

To sufficiently plead a claim for indirect infringement, a plaintiff need only plead facts sufficient to *infer* that defendants had knowledge of the asserted patents

and intent to induce infringement. *See BioMérieux, S.A. v. Hologic, Inc.*, No. 18-21 (LPS), 2018 WL 4603267, at *5 (D. Del. Sept. 25, 2018) ("By alleging sales and marketing … the Complaint sufficiently alleges knowledge and intent to induce infringement."). BTL has pled facts sufficient to infer knowledge and intent.

As an initial matter, and despite Allergan's protestations to the contrary, pre-suit knowledge is *not* required to properly plead induced infringement. *Groove Digital, Inc. v. King.com, Ltd.*, No. 1:18-cv-00836-RGA, 2018 WL 6168615, at *2 (D. Del. Nov. 26, 2018). The act of filing "the Complaint is sufficient to establish the requisite knowledge for post-filing indirect infringement liability." *Id.*; *see also Telecomm Innovations, LLC v. Ricoh Co.*, 966 F. Supp. 2d 390, 394 (D. Del. 2013). Having filed the complaint, BTL "has sufficiently pled defendants' knowledge of the [asserted] patent[s] for purposes of post-complaint relief." *Telecomm*, 966 F. Supp. 2d at 394.

In any event, BTL's complaint alleges specific facts that support a reasonable inference that Allergan had pre-suit knowledge of the asserted patents. As the complaint states, BTL's European affiliate initiated a formal inspection of the CoolTone product's German manufacturing facility as part of a proceeding related to BTL's German intellectual property rights that cover the Emsculpt device. Compl. ¶ 56. Knowledge of the asserted patents may also be inferred from

BTL's website giving notice that the Emsculpt device may be covered by one or more U.S. or foreign patents or pending applications. *Id.*; *see Novatel Wireless, Inc. v. Franklin Wireless Corp.*, No. 10cv2530-CAB (JMA), 2012 WL 12845615, at *2–3 (S.D. Cal. July 19, 2012) (concluding defendants had knowledge of patents due in part to plaintiffs' website listing patents covering its products). This knowledge is imputed to all Defendants in light of the "Trusted Allergan Partnership" (Compl. ¶ 9) in which all Defendants participate, and because each defendant acts in concert with one another to infringe the asserted patents. *E.g.*, *id.* ¶¶ 14, 17; Exs. 1, 2. *See Kyowa Hakka Bio. Co. v. Ajinomoto Co.*, No. 17-313, 2018 WL 834583, at *11 (D. Del. Feb. 12, 2018) (accepting allegations that subsidiaries had knowledge of patents because defendants functioned as "integrated organization" and "single business enterprise"); *BioMérieux*, 2018 WL 4603267, at *5 (imputing knowledge to multiple defendants because business relationship directly related to accused products and parties compete in small industry where invention achieved "some notoriety"); *Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-cv-00546-JRG, 2020 WL 1478356, at *5 (E.D. Tex. Mar. 25, 2020) ("[T]he pleading standard set out by *Iqbal* and *Twombly* does not require identification of actions on a defendant-by-defendant basis." (internal citations omitted)).

17

BTL's complaint also pleads facts demonstrating that Allergan had pre-suit knowledge of the Emsculpt device and sought to compete with it. BTL provides specific examples of Allergan's marketing materials and emails to customers where Allergan directly compares the infringing features of the CoolTone product to the Emsculpt device. *See* Compl. ¶ 36 (citing *id.* Ex. 17). BTL's complaint describes emails that Allergan sent to Emsculpt customers entitled "CoolTone vs. Emsculpt detail (Allergan First special)," providing a comparison between its CoolTone product and the Emsculpt device. *Id.* ¶ 40 (citing *id.* Ex. 23). These allegations of pre-suit knowledge of the patented Emsculpt device and Allergan's efforts to compete with it help support a plausible inference of pre-suit knowledge of the patents-in-suit. *See Align*, 339 F. Supp. 3d at 447–48 (citing, among other factors,  pre-suit knowledge of directly competing product in a small market with few competitors, where accused product was a "knockoff product," as supporting plausible showing of pre-suit knowledge of patents-in-suit); *see also California Inst. of Computer Assisted Surgery Inc. v. Med-Surgical Servs., Inc.*, No. C 10-05067 CS, 2011 WL 672709, at *4 (N.D. Cal. Feb. 16, 2011) (knowledge inferred from defendant's website description of patented technology and corresponding nature to titles of patents-in-suit).

18

BTL's complaint also pleads facts sufficient to infer Allergan's intent to induce infringement. BTL's complaint alleges that Allergan had the requisite intent through its marketing materials and promotional materials that encouraged its customers to use its products in an infringing manner. *Telecomm*, 966 F. Supp. 2d at 395 (concluding complaint sufficiently pleaded knowledge of, and specific intent to, induce patent infringement based on defendants' marketing, or support and instructions to customers to use product in infringing manner); *see also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341–46 (Fed. Cir. 2012) (holding that advertising directed toward customers to encourage the customers to utilize the patented invention was sufficient to plead defendants' specific intent).

BTL's complaint describes Allergan's marketing materials that advertise the use of CoolTone in conjunction with CoolSculpting with the slogan: "Eliminate fat with CoolSculpting®. Tone muscle with CoolTone™." Compl. ¶ 50 (citing *id.* Exs. 29–31); *see also id.* ¶ 53. Allergan's advertisement, attached as Exhibit 29 to the complaint, advertises CoolTone as using "[magnetic muscle] technology" to "penetrate[] into the muscle layers and induce[] involuntary muscle contractions." The same ad discusses CoolSculpting's freezing technology to kill fat cells. *Id.* These ads are directed to Allergan's customers, i.e., physicians, encouraging use of

19

the accused products in an infringing manner. Confirmation that physicians are following Allergan's instructions is exhibited by social media posts cited in the complaint, for example by Dr. Grant Stevens, who intends to use the accused products as Allergan encourages. Compl. ¶ 54; *see also id.* Ex. 31 (medical aesthetic professional's webpage comparing CoolTone and the Emsculpt product). And as described above, BTL's complaint describes Allergan's emails to Emsculpt customers specifically comparing the infringing features of the CoolTone product to the Emsculpt device. *Id.* ¶ 40 (citing *id.* Ex. 23). These facts support BTL's allegation that "Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the CoolTone device . . . knowing and intending that their customers will commit infringing acts." *Id.* ¶ 48.

Taken as a whole, Allergan's promotional materials, advertising, and emails sent directly to customers provide a plausible inference of Allergan's intent to induce infringement.

### 3.     CoolTone Has No Substantial Non-Infringing Uses

"A simple allegation that the product at issue is not suitable for substantial non-infringing use is generally sufficient to satisfy the pleading requirements of *Twombly* and *Iqbal*." *Rhodes Pharm. L.P. v. Indivior, Inc.*, No. 16-1308, 2018 WL 326405, at *9 (D. Del. Jan. 8, 2018). BTL's complaint meets that standard; in its complaint, BLT asserts that "Defendants have known that the CoolTone device is

20

designed for a use that infringes one or more claims of the [asserted] patent, and the CoolTone device lacks a substantial non-infringing use." Compl. ¶¶ 62, 68; *see also id.* ¶ 56. As described above, BTL's complaint describes the FDA-approved indications for CoolTone and Allergan's website that describes CoolTone's uses, which are identical to that of the Emsculpt device, without any non-infringing uses.

That CoolTone may be used alone or in conjunction with CoolSculpting does not indicate that CoolTone has a non-infringing use, as Allergan argues (at 20). That is because use of the CoolTone product infringes both when it is used with and without the CoolSculpting product. Compl. ¶ 52. For example, exemplary claim 1 of the '634 patent covers "[a] method for toning muscles in a patient using time-varying magnetic fields" without the use of a cooling element that is provided by the CoolSculpt. *Id.* Ex. 11 (claim 1). In contrast, exemplary claim 22 also requires the use of a cooling element. *Id.*

Moreover, at the pleading stage, BTL cannot prove a negative, as Allergan suggests is required. To the extent that Allergan contests that the CoolTone product has substantial non-infringing uses, "this is a factual inquiry not suitable for resolution on a motion to dismiss." *Nalco*, 883 F.3d at 1357.

21

### 4.   BTL's Complaint Pleads Facts That Support a Willful Infringement Claim

As discussed above in Section IV.B.3, BTL has plead facts sufficient to infer that Allergan had knowledge of the patents-in-suit (pre-suit and post-suit). BTL also alleges that since attaining knowledge of the asserted patents, Allergan continues to infringe. Compl. ¶¶ 57, 58, 61–64, 67–69. This, combined with the predicate direct infringement allegations described in Section IV.A above, are sufficient to "raise a reasonable expectation that discovery will reveal evidence of" Allergan's willful infringement. *Phillips*, 515 F.3d at 234; *see also Boston Sci.*, 415 F. Supp. 3d at 495 ("the safest course is to allow an enhanced damages claim to proceed beyond the pleadings stage if the operative pleading alleges facts" of knowledge of the patents and infringement).

Even if the Court were to conclude that it could not infer from the pleaded facts that Allergan had pre-suit knowledge of the patents-in-suit, such a finding would not preclude a post-suit willfulness claim. This Court has sustained claims for willful infringement based on post-suit knowledge. *See, e.g.*, *NextStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. 19-1031-RGA-SRF, 2019 WL 5626647, at *3 (D. Del. Oct. 31, 2019) (proceeding with post-suit willful infringement allegations); *DermaFocus*, 201 F. Supp. 3d at 473 (allowing willful infringement allegations to go forward "[u]nder the less rigid standard announced" in *Halo*

22

*Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 778–79 (D. Del. 2013) (proceeding with willful infringement allegations based on post-suit knowledge).

## V.   CONCLUSION

For the foregoing reasons, this Court should deny Allergan's motion to dismiss.

|  |  |
|---|---|
| | */s/ Karen E. Keller* |
| OF COUNSEL: | Karen E. Keller (No. 4489) |
| J.C. Rozendaal | SHAW KELLER LLP |
| Michael E. Joffre | I.M. Pei Building |
| Chandrika Vira | 1105 North Market Street, 12th Floor |
| STERNE, KESSLER, GOLDSTEIN & FOX PLLC | Wilmington, DE 19801 |
| 1100 New York Ave., NW, Suite 600 | (302) 298-0700 |
| Washington, DC 20005 | kkeller@shawkeller.com |
| (202) 371-2600 | |
| | *Attorneys for Plaintiff BTL Industries, Inc.* |
| April 27, 2020 | |

23

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Court's November 6, 2019 Standing Order, I hereby confirm that this brief complies with the type and number limitations set forth in the Standing Order. I certify that this document contains 4,971 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, table of contents and authorities, or the counsel blocks.

<u>*/s/ Karen E. Keller*</u>

## <u>CERTIFICATE OF SERVICE</u>

I, Karen E. Keller, hereby certify that on April 27, 2020, this document was

served on the persons listed below in the manner indicated:

### <u>BY EMAIL</u>

Jack B. Blumenfeld
Jeremy A. Tigan
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

Justin P.D. Wilcox
Kerri-Ann Limbeek
Karl Mullen
Jun Tong
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400
jwilcox@desmaraisllp.com
klimbeek@desmaraisllp.com
kmullen@desmaraisllp.com
jtong@dllp.com

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 1
## Redacted in its Entirety

# THIS PAGE INTENTIONALLY LEFT BLANK

# REDACTED MATERIAL

# Exhibit 2

OPIS



## Výpis

z obchodního rejstříku, vedeného
Městským soudem v Praze
oddíl C, vložka 157389

| | |
|---|---|
| **Datum vzniku a zápisu:** | 20. října 2009 |
| **Spisová značka:** | C 157389 vedená u Městského soudu v Praze |
| **Obchodní firma:** | BTL Medical Technologies s.r.o. |
| **Sídlo:** | Evropská 423/178, Vokovice, 160 00 Praha 6 |
| **Identifikační číslo:** | 289 78 404 |
| **Právní forma:** | Společnost s ručením omezeným |
| **Předmět podnikání:** | |
| | Výroba, obchod a služby neuvedené v přílohách 1-3 živnostenského zákona |
| **Statutární orgán:** | |
| **jednatel:** | |
| | Ing. TOMÁŠ DRBAL, dat. nar. 1. listopadu 1973 |
| | Nedvědovo náměstí 2/3, Podolí, 147 00 Praha 4 |
| | Den vzniku funkce: 1. února 2019 |
| **Způsob jednání:** | Jménem společnosti jedná jednatel ve všech věcech samostatně. |
| **Společníci:** | |
| **Společník:** | JAN VILD, dat. nar. 26. září 1968 |
| | Nad Buďánkami I 2150/1, Smíchov, 150 00 Praha 5 |
| **Podíl:** | Vklad: 200 000,- Kč |
| | Splaceno: 100% |
| | Obchodní podíl: 100 % |
| **Základní kapitál:** | 200 000,- Kč |
| **Ostatní skutečnosti:** | |
| | Počet členů statutárního orgánu: 1 |
| | Obchodní korporace se podřídila zákonu jako celku postupem podle § 777 odst. 5 zákona č. 90/2012 Sb., o obchodních společnostech a družstvech. |
| | Na společnost BTL Medical Technologies s.r.o., se sídlem Evropská 423/178, Vokovice, 160 00 Praha 6, identifikační číslo osoby: 289 78 404, jako na nástupnickou společnost, přešla v důsledku rozdělení odštěpením sloučením část jmění rozdělované společnosti BTL zdravotnická technika a.s., se sídlem Makovského náměstí 3147/2, Žabovřesky, 616 00 Brno, identifikační číslo: 268 84 143, určená projektem rozdělení odštěpením sloučením vyhotoveným dne 23.5.2019. Rozhodný den rozdělení byl 1. leden 2019. |
| | Na společnost BTL Medical Technologies s.r.o., se sídlem Evropská 423/178, Vokovice, 160 00 Praha 6, identifikační číslo osoby: 289 78 404, jako společnost nástupnickou, přešlo v důsledku fúze sloučením veškeré jmění společnosti Medical Technologies CZ a.s., se sídlem Evropská 423/178, Vokovice, 160 00 Praha 6, identifikační číslo osoby: 266 96 380, jako společnosti zanikající. Rozhodným dnem fúze byl 1. leden 2019. |

Veřejný rejstřík

Ověřuji pod pořadovým číslem **102245_041440**   , že tato listina, která
vznikla převedením výstupu platných údajů z informačního systému veřejné
správy z elektronické podoby do podoby listinné, skládající se z 1 listu,
se doslovně shoduje s obsahem výstupu z informačního systému veřejné
správy v elektronické podobě.

Praha 24                                          dne **26.08.2019** v **11:09**


Podpis . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          Razítko:

Zeman Tomáš

*(Translation into English)*

# Copy of an Entry

in the Commercial Register, maintained by the
Municipal Court in Prague,
Section C, File 157389

| | |
|---|---|
| Date of incorporation and registration: | 20 October 2009 |
| File number: | C 157389, maintained by the Municipal Court in Prague |
| Company name: | BTL Medical Technologies s.r.o. |
| Registered office: | Evropská 423/178, 160 00 Prague 6 |
| Identification number: | 289 78 404 |
| Legal form: | Limited liability company (*in Czech: společnost s ručením omezeným*) |
| Governing body: Executive Director: | Ing. TOMÁŠ DRBAL, born on 1 November 1973 Nedvědovo náměstí 2/3, Podolí, 147 00 Prague 4 In the office since: 1 February 2019 |
| Manner of acting: | The Executive Director acts on behalf of the Company individually in all matters. |
| Shareholders: Shareholder: | JAN VILD, born on 26 September 1968 Nad Buďánkami I 2150/1, Smíchov, 150 00 Prague 5 |
| Share: | Contribution: CZK 200,000 Paid up: 100% Share: 100% |
| Registered capital: | CZK 200,000 |
| Other facts: | Number of members of the governing body: 1 |
| | The corporation has chosen to be governed by the Act in its entirety based on the procedure under Section 777 (5) of Act No. 90/2012 Coll., on Business Companies and Cooperatives. |
| | A part of the assets and liabilities of BTL zdravotnická technika a.s., with its registered office at Makovského náměstí 3147/2, Žabovřesky, 616 00 Brno, identification no.: 268 84 143, as the demerged company, defined by the project of demerger through spin-off by acquisition, prepared on 23 May 2019, passed to the successor company BTL Medical Technologies s.r.o., with its registered office at Evropská 423/178, Vokovice, 160 00 Prague 6, identification no.: 289 78 404, as a result of a demerger through spin-off by acquisition. The decisive day with respect to the demerger was 1 January 2019. |
| | All assets and liabilities of Medical Technologies CZ a.s., with its registered office at Evropská 423/178, Vokovice, 160 00 Prague 6, identification no.: 266 96 380, as the dissolved company, passed to the successor company BTL Medical Technologies s.r.o., with its registered office at Evropská 423/178, Vokovice, 160 00 Prague 6, identification no.: 289 78 404, as a result of a merger by acquisition. The decisive day with respect to the merger was 1 January 2019. |

Public Register

I hereby certify, under serial no. **102245_041440**, that this document, which was created by transformation of a valid output from the public administration information system from electronic to printed form, consisting of **1** sheet, is a verbatim copy of the electronic output from the public administration information system.

**Prague 24**                              On **26 August 2019** at **11:09 a.m.**


              (*signature*)
Signature ..........................................          Stamp:

Zeman Tomáš

                                        (*round stamp:*)
                                        Česká pošta, s.p.
                                          -2587-

## TRANSLATOR'S STATEMENT

I, the undersigned translator and interpreter of the English language appointed to that effect by resolution of the Municipal Court in Prague no. Spr 611/2016 of 6 September 2016, hereby certify that the foregoing document is a true and complete translation of the original Czech document attached hereto.

The translation is registered under no. _986 / 2019_ in the translator's book of certified translations.

Date: _02/09/ 2019_

Michaela Rybáková
Translator and interpreter of the English language



ěž. čís. seznamu _D 97/ 2019_

otvrzuje se že, _MGR MICHAELA RYBÁKOVÁ_

est ustanoven stálým přísežným tlumoční-

em jazyka _ANGLICKÉHO_

17 -09- 2018

Ing. Simona KOLAŘÍKOVÁ

100Kč

## Ověření - vidimace

Ověřuji, že tento opis složený z ............................ 4 listů

doslovně souhlasí s listinou, z níž byl pořízen,

složenou z ...................... 4 listů.

V Praze dne: 2 3. 09. 2019

Mgr. Soňa GLAZAROVÁ
notářka se sídlem v Praze
Praha 2, náměstí Míru 15

šž. čís. seznamu
otvrzuje se ž.,
st ustanoven st
em jazyka    A/



**APOSTILLE**
(Convention de La Haye du 5 octobre 1961)

1. **Česká republika**
   **Czech Republic**

   Tato veřejná listina
   This public document          Mgr. Soňa Glazarová

2. byla podepsána .................................................................................
   has been signed                notářka

3. jehož funkce .......................................................................................
   acting in the capacity of      Mgr. Soňa Glazarová

4. opatřena razítkem ..............................................................................
   bears the seal/stamp of        notářka v Praze

................................................................................................................

**OVĚŘENO**
**CERTIFIED**

5. v Praze                    6. dne ....... 23.9.2019.........
   at Prague                     date

7. **Ministerstvo spravedlnosti ČR**
   **Ministry of Justice of the Czech Republic**

8. čís. 13321/2019............
   N°

9. kolek/razítko:              10. Podpis:
   duty stamp/stamp:               Signature
                                   Bc. Aneta Nová
   ........................         ..........................................

100 Kč

O
do
slc
v t