IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTL INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-2356 (CFC) |
| | ) | |
| ALLERGAN USA, INC., | ) | **REDACTED** |
| ALLERGAN, INC., ZELTIQ | ) | **PUBLIC VERSION** |
| AESTHETICS, INC. and ZIMMER | ) | |
| MEDIZINSYSTEME GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF ZIMMER MEDIZINSYSTEME
GMBH'S MOTION TO DISMISS THE COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

OF COUNSEL:

Justin P.D. Wilcox
Kerri-Ann Limbeek
Karl Mullen
Jun Tong
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

*Attorneys for Defendants Allergan USA,
Inc., Allergan, Inc., Zeltiq Aesthetics,
Inc. and Zimmer MedizinSysteme GmbH*

May 22, 2020

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ............................................................................1

II.     ARGUMENT...................................................................................1

        A.      Zimmer Is Not Subject To Specific Jurisdiction Under 10 Del.
                C. § 3104(c)(2). ...............................................................1

        B.      The Court Does Not Have Jurisdiction Over Zimmer Under
                "Dual Jurisdiction" or "Stream-of-Commerce" Theory. ......................2

        C.      Exercising Specific Jurisdiction Over Zimmer In Delaware Is
                Inconsistent With Due Process...............................................6

        D.      Zimmer Is Not Subject To Rule 4(k)(2) Jurisdiction. .........................9

        E.      There Is No Basis For Jurisdictional Discovery. .................................9

III.    CONCLUSION ...........................................................................10

i

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*3G Licensing, SA. v. HTC Corp.*,
    No. 17-83-LPS-CJB, 2017 WL 6442101 (D. Del. Dec. 18, 2017) ................3

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*,
    817 F.3d 755 (Fed. Cir. 2016) ......................................................................6, 7

*Akro Corp. v. Luker*,
    45 F.3d 1541 (Fed. Cir. 1995) ...........................................................................6

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009) ........................................................................9

*Belden Techs., Inc. v. LS Corp.,*
    829 F. Supp. 2d 260 (D. Del. 2010) .................................................................4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) ......................................................................3, 4

*Commissariat A L'Energie Atomique v. Chi Mei Optoelecs. Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005) ......................................................................10

*Enzo Life Scis., Inc. v. Hologic, Inc.*,
    No. 16-894-LPS-CJB, 2018 WL4660355 (D. Del. Sept. 26, 2018)...............9

*Freres v. SPI Pharma, Inc.*,
    629 F. Supp. 2d 374 (D. Del. 2009) .................................................................2

*Graphics Properties Holdings, Inc. v. ASUS Computer Int'l*,
    70 F. Supp. 3d 654 (D. Del. 2014) ................................................................3, 5

*Mendelson v. Delaware River & Bay Auth.*,
    56 F. Supp. 2d 436 (D. Del. 1999) ...................................................................2

*Metricolor LLC v. L'Oreal S.A.*,
    791 F. App'x 183 (Fed. Cir. 2019).................................................................10

*M-l Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
    890 F .3d 995 (Fed. Cir. 2018) .........................................................................9

*Patent Rights Protection Grp., LLC v. Video Gaming Tech., Inc.*,
    603 F.3d 1364 (Fed. Cir. 2010) .....................................................................8

*Polar Electro Oy v. Suunto Oy,*
    829 F.3d 1343 (Fed. Cir. 2016) ................................................................4,5

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
    547 F. Supp. 2d 365 (D. Del. 2008) ........................................................ 8, 10

*Seiden for S. China Livestock, Inc. v. Schwartz, Levitsky, & Feldman LLP,*
    No. 17-1869 (MN), 2018 WL 5818540 (D. Del. Nov. 7, 2018) ....................2

*Walden v. Fiore*,
    571 US 277 (2014) ...........................................................................................6

**Rules**

Fed. R. Civ. P. 4(k)(2)(B) ........................................................................9

## I.   <u>INTRODUCTION</u>

Having conceded that Zimmer is not subject to general jurisdiction, in its Opposition (D.I. 33 ("Opp.")), BTL argues that the Court should exercise specific jurisdiction despite Zimmer's lack of any contacts with Delaware.  BTL's entire argument rests on the fact that Zimmer entered into a Distribution Agreement ("Agreement") with co-Defendant Zeltiq.  But the Agreement plainly demonstrates that ███████████████████████████████████ ████████ ██████████ ████████████████████████████ ██████████████████████████.  And Zeltiq's contacts with this District cannot, as BTL suggests, be imputed to Zimmer to manufacture jurisdiction in this case.  Because BTL cannot demonstrate that Zimmer conducts any allegedly infringing activities in Delaware, or that it intends to serve the market, this Court lacks specific jurisdiction over Zimmer.

## II.   <u>ARGUMENT</u>

### A.   **Zimmer Is Not Subject To Specific Jurisdiction Under 10 Del. C. § 3104(c)(2).**

BTL argues that the Agreement subjects Zimmer to jurisdiction under Section 3104(c)(2) of the Delaware Long Arm Statute.  (Opp. 16.)  But BTL cannot point to a single provision that either (a) specifically requires or contemplates targeting Delaware for sales of CoolTone[TM] devices, or (b) gives Zimmer authority to direct how Zeltiq commercializes the devices.  Indeed, unlike

1

the contract in *Mendelson v. Delaware River & Bay Auth.*, 56 F. Supp. 2d 436, 438-39 (D. Del. 1999), on which BTL relies, Zimmer's obligations under the Agreement are untethered to Delaware; rather, ████████████████████████████ ████████████████████████████. 56 F. Supp. 2d at 441 (finding that because defendant provided custom doors for a Delaware ferry, it was "***certain*** that the doors would be used, at least in part, in Delaware"); (Agreement §§ 7.3, 2.1).[1] BTL's sweeping theory that a foreign corporation is subject to specific jurisdiction in Delaware based ***solely*** on the fact that it enters into a contract with a Delaware corporation that serves the United States market has been previously rejected. *See, e.g.*, *Seiden for S. China Livestock, Inc. v. Schwartz, Levitsky, & Feldman LLP*, No. 17-1869 (MN), 2018 WL 5818540, at *5 (D. Del. Nov. 7, 2018); *see also Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 387-88 (D. Del. 2009). Because BTL "provides no factual support indicating that any part of [the Agreement] relate[s] to the provision of services within Delaware," this Court lacks specific jurisdiction over Zimmer under Section 3104(c)(2). *Seiden*, 2018 WL 5818540, at *5.

### B. The Court Does Not Have Jurisdiction Over Zimmer Under "Dual Jurisdiction" or "Stream-of-Commerce" Theory.

BTL's dual jurisdiction argument finds no basis in fact or law. BTL incorrectly asserts that "[t]he terms of the Agreement show that Zimmer intended

---

[1] Emphasis added unless otherwise noted.

2

to serve the U.S. and Delaware markets" and that "Zimmer has succeeded in serving the Delaware market [because] the CoolTone[TM] product has reached at least two Delaware physicians." (Opp. 12, 13-14.)  But, as explained above, the Agreement does not specifically contemplate the Delaware market, and ███████

████████████████████████████████████████████████████████

████████████████████████████████ ████████████████████████

██████████████████████████ ████████████ ████████████████████

███████.)   Further, the cases upon which BTL relies do not support its dual jurisdiction theory.  For example, in *Graphics Properties Holdings, Inc. v. ASUS Computer Int'l*, "[o]f key significance" to the court's finding of intent was that the Taiwanese defendant was "aware of and actively utilize[d] [three physical] reseller outlets [in Delaware] to sell the accused devices."   70 F. Supp. 3d 654, 662 (D. Del. 2014).  Here, however, Zimmer was not involved in, or even aware of, the two alleged sales to Delaware physicians.  *Id.*[2]

Zimmer's obligations under the Agreement do not show that it purposefully availed itself of Delaware.  The Agreement does not require Zimmer to perform

---

[2] The other cases upon which BTL relies similarly focused on defendants' direct and ongoing relationships with ***retailers*** of the accused products in the forum.  *See 3G Licensing, SA. v. HTC Corp.*, No. 17-83-LPS-CJB, 2017 WL 6442101, at *2- 3 (D. Del. Dec. 18, 2017) (relying on foreign defendant's touting its distribution in the United States through local retail channels); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563-64 (Fed. Cir. 1994) (foreign defendant did not dispute that it sold the accused products in the district (albeit indirectly) and had an ongoing relationship with a retailer located there).

any actions in Delaware.[3] ███████████████████████████████████

████████████████████████████████████████████████  BTL's

reliance on *Polar Electro Oy v. Suunto Oy,* in which the foreign defendant's

"active participation in supplying and shipping the accused products to Delaware []

constitute[d] purposeful availment," is therefore misplaced.  829 F.3d 1343, 1351

(Fed. Cir. 2016).  In fact, the *Polar* court distinguished those facts from a case, like

this one, where "a small manufacturer"—Zimmer—"sells its products to an

independent distributor"—Zeltiq—"who then distributes the products to consumers

nationwide" ████████████ .  *Id.*; *see also Belden Techs., Inc. v. LS Corp.,*

829 F. Supp. 2d 260, 268 (D. Del. 2010) (holding that four sales of accused cables

in Delaware and warranty obligations were ***insufficient*** to establish dual

jurisdiction over LS Korea because "[t]here is no evidence of record that LS Korea

sent any cable to Delaware. LS America takes title to the cable in South Korea or

Vietnam, prior to importation.").[4]

---

[3] BTL's assertion that "Zimmer must have a U.S. location" where Zimmer performs repair work and "where the CoolTone[TM] applicator covers are 'Made in USA'" is wrong. (Opp. 13.) ████████████████████████████ ██████████████████ ████████████████████
████████████  (Affidavit of Armin Zimmer, filed concurrently herewith, ("Zimmer Reply Decl.") ¶¶ 6-7.)  Nor does Zimmer manufacture any CoolTone[TM] applicator covers.  (*Id.* ¶ 5.)

[4] Contrary to BTL's suggestion (Opp. 14 n.4), *Polar* explained that in *Beverly Hills Fan*, the Federal Circuit "***declined*** to decide which [test for stream-of-commerce intent] should be adopted."  829 F.3d at 1349-50.  Because Zimmer is neither involved in nor aware of any alleged marketing efforts directed at Delaware

BTL's assertion that the Agreement evidences Zimmer's intent to serve the United States market as a whole also lacks merit.  (Opp. 12-13.)  First, contrary to BTL's characterization, ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Second, ████

████████████████████████████████ ████████ ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  In any event, BTL fails to identify any legal support dictating that compliance with U.S. regulatory standards confers jurisdiction over a foreign manufacturer.[5]

Because Zimmer neither performs allegedly infringing activities in the United States nor intends to serve the Delaware market, dual jurisdiction theory cannot establish specific jurisdiction here.

---

(Zimmer Reply Decl. ¶¶ 3-4), it does not possess the requisite intent under any articulation of the test.  *See* 829 F.3d at 1348-49.

[5] BTL also argues that "Zimmer's other U.S. activities—products sold throughout the United States and its subsidiary in California"—demonstrate that intent.  (Opp. 13 (citing (Ex. 1; *Graphics*, 70 F. Supp. 3d at 662).)  But Zimmer conducts no activities in the U.S.  (D.I. 22 ("Zimmer Decl.") ¶¶ 3, 5, 6.)  And, unlike the foreign defendant's U.S. subsidiary in *Graphics*, Zimmer's subsidiary—a **California** corporation that BTL stipulated to dismiss from this case—has **no** involvement with the accused CoolTone™ device.  (*See* D.I. 37; D.I. 19 at 5.)

## C.   Exercising Specific Jurisdiction Over Zimmer In Delaware Is Inconsistent With Due Process.

BTL's due process arguments recycle the same factual and legal support as its arguments regarding dual jurisdiction (Opp. 17-20), and fail for the same reasons.

First, BTL argues that Zimmer purposefully directs its activities to Delaware because "[i]ts distribution partner, Zeltiq, is incorporated" here, Zimmer allegedly knew Zeltiq would sell the products in the United States, and Zeltiq allegedly sold two products in Delaware.  (Opp. 18.)  But the law is clear that Zeltiq's alleged activities cannot be imputed to Zimmer merely because it entered into a contract with Zeltiq.[6]  Rather, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 US 277, 285 (2014).

Second, BTL argues that Zimmer's 510(k) FDA filing establishes purposeful contacts with Delaware.   (Opp. 18-19.)   But BTL's reliance on *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 759-60, 762-63 (Fed. Cir. 2016), is misplaced.   In *Acorda,* the Federal Circuit determined that an **ANDA**

---

[6] *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995), upon which BTL relies, is inapposite.  There, a defendant-patentee (in a declaratory judgment action) directed his activities at the forum, including, among other things, his "exclusive licensing of one of the accused infringer's competitors within the forum state," which "undoubtedly relate[d]" to the claims—"challenge[s] to the validity and enforceability of th[at] patent."  *Id.* at 1542-43, 1548-49.

filing—not a 510(k) filing—showed purposeful contacts because the "*ANDA* filer"

"has, by its filing, reliably confirmed a *plan to engage in real-world marketing*,"

including in the forum.  *Id.* at 761.  Here, by contrast, the Agreement dictates that

████████████████████████████████████████████████████████

████████████████  ████████  ██████████████████████████

████████████████████████

    Third, BTL's argument that "the sum of [Zimmer's] actions … give[s] rise

to BTL's patent infringement suit" (Opp. at 20), lacks any factual or legal basis.

Due process requires that BTL's claims arise out of Zimmer's own activities *in the*

*forum*.  No dispute exists, however, that Zimmer performs no infringing acts in

Delaware or anywhere in the United States.  (Zimmer Decl. ¶ 9.)  In fact, Zimmer

does not conduct *any* activities in the United States.  (*Id.* ¶ 5.)

    Because BTL fails to establish that Zimmer purposely availed itself of this

forum, the Court need not consider whether the exercise of personal jurisdiction is

reasonable.   Regardless, exercising jurisdiction over Zimmer would not be

reasonable, including because of the burden to Zimmer of litigating this case far

from its German home.  No credible dispute exists that it is burdensome for a

foreign corporation to defend a patent infringement lawsuit in the United States.

And *Patent Rights Protection Grp., LLC v. Video Gaming Tech., Inc.*—which

involved two U.S. defendants accused of infringing activities in the forum, not a

foreign company, like Zimmer, who conducts no activities whatsoever in Delaware—does not support BTL's arguments to the contrary. 603 F.3d 1364, 1370 (Fed. Cir. 2010). Nor do BTL's assertions that Zimmer "touts itself as an international company, with products sold globally," or "has a corporate subsidiary in the United States" suggest that Zimmer could have reasonably anticipated being haled into court here. (Opp. 21); *see Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 367, 374-75 (D. Del. 2008) (the record did not establish purposeful availment even where foreign defendant "touted its 'established distribution channels' and 'close, direct relationships' with end users" in the U.S. and had a U.S. subsidiary).[7]

BTL brought this suit against Zimmer to increase the expense and burden placed on a competitor. Indeed, before filing this action, BTL had already filed an infringement suit against Zimmer in Germany, which is still pending. Whatever interest BTL may have in also adjudicating its patent rights here cannot overcome Zimmer's lack of contacts with Delaware in view of the burden of this serial litigation. The Court should accordingly decline to exercise jurisdiction over Zimmer.

---

[7] Belying BTL's assertion ████████████████████████████ ██████████████ ███ ██ (Opp. 8), ████████████████████████████████████████████████████████████████████████

### D.    Zimmer Is Not Subject To Rule 4(k)(2) Jurisdiction.

Rule 4(k)(2) requires, among other things, that "exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2)(B).  Because, as explained above, Zimmer does not have sufficient contacts with the United States to comport with due process, the Court should decline to exercise jurisdiction over it.[8]

### E.    There Is No Basis For Jurisdictional Discovery.

The Court should reject BTL's request for jurisdictional discovery because BTL fails to make "a showing that further discovery would elucidate the facts necessary to prove that the court ha[s] personal jurisdiction," which "is especially important where, as here, the defendant enters declarations into evidence specifically denying certain jurisdictional allegations."  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1023 (Fed. Cir. 2009).  Zimmer has provided two declarations from its CEO, Armin Zimmer, and produced the

---

[8] Nor is the Agreement, as BTL suggests, a basis for exercising jurisdiction over Zimmer under Rule 4(k)(2).  Unlike the foreign defendants in the cases upon which BTL relies, Zimmer does not distribute the CoolTone[TM] product in the United States.  (Agreement § 2.1); *M-l Drilling Fluids UK Ltd. v. Dynamic Air Ltda*., 890 F .3d 995, 999-1001 (Fed. Cir. 2018) (finding foreign defendant participated in infringing activities in the U.S. by designing, manufacturing, and operating accused systems on ships "that are themselves U.S. territory"); *Enzo Life Scis., Inc. v. Hologic, Inc.*, No. 16-894-LPS-CJB, 2018 WL4660355, at *3-4, *6 (D. Del. Sept. 26, 2018) (finding jurisdiction because the foreign defendant "play[ed] a direct role in the commercial operations relating to the Accused Products in the United States, including in this District" and its Delaware-incorporated subsidiary acted as its agent).

Agreement.  That evidence confirms that Zimmer (a) has no presence in the United States, and (b) is not involved in the marketing or distribution of CoolTone™ in the United States, refuting BTL's allegations.  *See Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 191 (Fed. Cir. 2019) (affirming denial of jurisdictional discovery where plaintiff did not refute that defendant "has 'no physical presence in the United States' and does 'not conduct business in the United States'").[9] Therefore, BTL's request for jurisdictional discovery should be denied.

## III.  CONCLUSION

For the reasons set forth in its Opening Brief and herein, Defendant Zimmer respectfully requests that the Court dismiss BTL's Complaint.

---

[9] Indeed, the cases upon which BTL relies ordered discovery that Zimmer has already provided here.  *See Commissariat A L'Energie Atomique v. Chi Mei Optoelecs. Corp.*, 395 F.3d 1315, 1322-24 (Fed. Cir. 2005) (ordering discovery regarding defendant's relationship with Delaware retailers, its marketing efforts directed to the United States (including Delaware), and its e-solution platform); *Power Integrations*, 547 F. Supp. at 375-77 (ordering jurisdictional discovery of distribution agreements and sales efforts in the United States).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

OF COUNSEL:

Justin P.D. Wilcox
Kerri-Ann Limbeek
Karl Mullen
Jun Tong
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
(212) 351-3400

May 22, 2020

*Attorneys for Defendants Allergan USA, Inc., Allergan, Inc., Zeltiq Aesthetics, Inc. and Zimmer MedizinSysteme GmbH*

11

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 2,500 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.


*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 22, 2020, upon the following in the manner indicated:

Karen E. Keller, Esquire                                          *VIA ELECTRONIC MAIL*
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

J.C. Rozendaal, Esquire                                          *VIA ELECTRONIC MAIL*
Michael E. Joffre, Esquire
Chandrika Vira, Esquire
Anna G. Phillips, Esquire
STERNE, KESSLER, GOLDSTEIN
   & FOX P.L.L.C.
1100 New York Avenue, NW, Suite 600
Washington, DC  20005
*Attorneys for Plaintiff*

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)